UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK ANDREWS,

        Plaintiff,

v.

OAKLAND COUNTY, ET AL.,

        Defendants.

_____/

Case No. 09-10372

Honorable Nancy G. Edmunds


**OPINION AND ORDER GRANTING DEFENDANTS' MOTION SUMMARY
JUDGMENT [9]**


This § 1983 action arises out of a serious injury single-car accident that occurred on

October 17, 2007.  On September 11, 2008, Plaintiff Derek Andrews pleaded guilty to

operating a vehicle while impaired, Mich. Comp. Laws § 257.625(1)(a); a reduced charge

from the original charge of operating while intoxicated causing serious injury, Mich. Comp.

Laws § 257.625(5).  Defendant Oakland County Deputies Thomas, Kammer and Richert

investigated the accident.  Both Plaintiff and his female passenger were injured in the

accident; the female passenger suffered serious injuries.  Plaintiff's complaint, brought

pursuant to 42 U.S.C. § 1983, alleges that the Defendants violated his Fourteenth

Amendment due process rights and his Eight Amendment right to be protected from cruel

and unusual punishment.[1]  Specifically, as to the due process violation, Plaintiff avers that

_____

[1]In an earlier Order, this Court declined to exercise supplemental jurisdiction over
Plaintiff's state-law claims, including but not limited to those for intentional infliction of
emotional distress, gross negligence, concert of action, and civil conspiracy, dismissing
them without prejudice.  (Doc. No. 6.)

he told Deputy Richert within 24 hours of the accident "that there was a struggle in the vehicle immediately prior to the accident" with his female passenger.  (Pl.'s 5/14/09 Aff. ¶ 5.)  Thus, Plaintiff argues, by deliberately omitting information about his female passenger's culpable conduct in connection with the accident in their accident reports and failing to convey this information to others responsible for investigating or initiating potential criminal charges, Defendant Deputies caused Plaintiff to incur the expense and humiliation of defending against an unsubstantiated and inappropriate felony charge for operating while intoxicated causing serious injury, Mich. Comp. Laws § 257.625(5), as opposed to the lesser expense and humiliation of defending against the lesser charge of operating a vehicle while impaired in violation of Mich. Comp. Laws § 257.625(1)(a).   As to the Eighth Amendment cruel and unusual punishment violation, Plaintiff avers that, following the accident and shortly after he arrived at the hospital, Defendant Deputy Richert "came into the hospital room" where he was located "and threw a cupped handful of water in my face as I was resting, strapped to a backboard" and "attempted to question me about the accident." (Pl.'s 5/14/09 Aff. ¶¶ 3-4.)  As to Defendant Oakland County, Plaintiff alleges that the County has policies, practices, or customs of deliberate indifference to the Fourteenth and Eighth Amendment rights at issue here thus rendering it liable to Plaintiff under § 1983.

For the reasons stated below, Defendants' motion for summary judgment is GRANTED.

I.   **Facts**

On October 17, 2007, Plaintiff was involved in a single car accident.  Both Plaintiff and his female passenger were injured.  Her injuries were more serious than his.  Both were transported by the Rochester Hills Fire Department to Pontiac Osteopathic Hospital.

Plaintiff admitted to investigating officers and others that he had consumed alcohol prior to driving, that he and his female passenger had been arguing, that when she went to hit him he lost control of the car, and that he did not mean to hurt her.  Plaintiff repeatedly asked to be taken to jail.  Blood drawn pursuant to a search warrant indicated that his blood alcohol level was .08% approximately two hours after the crash.

Defendant Deputy Richert, a member of the crash reconstruction unit, was the officer in charge of the accident investigation.  (Defs.' Ex. 2, 10/21/07 Incident/Prosecution Report at 2.)   Sergeant Stoner was the shift sergeant who spoke with Plaintiff at Pontiac Osteopathic Hospital.  (*Id.*)  Defendant Deputy Thomas was the responding officer who also spoke with Plaintiff.  (*Id.*)  Defendant Deputy Kammer was also a responding officer.  (*Id.* at 3.)

Deputy Thomas was the first officer on the scene.  He reported that:

I was traveling west bound on W. Avon road when I noticed two vehicles stopped on the side of the road.  As I approached, I observed a white female (Merissa Mazur) lying on the west bound curve in a fetal position.  Merissa was unconscious and unresponsive, next to her was a white male lying on his back.  Approximately ten feet from them was a red SUV with obvious damage.  All over the road was debris that appeared to have come from the red SUV.  The male said he was the driver of the vehicle and identified himself with Michigan driver . . . license as Derek Taylor Andrews.

Derek had injuries to his head and face but was able to speak.  When I first approached he got up and stated "I was drinking, take me to jail" then laid back down.  As I spoke with Derek I could smell a strong odor of intoxicant coming from his breath.  Derek continue [sic] to say "I'm hurt take me to jail.  I asked

3

Derek how he and Merissa got out of the car; he said they walked out and he helped her to where she was. Due [sic] to Derek's condition no field sobriety or preliminary breath test were conducted.

ACTION TAKEN: Rochester Hills Fire Department arrived on the scene and transported both Merissa and Derek to POH. I called for an accident investigator, Sergeant Wandri and Deputy Richert responded and processed the scene. I informed Deputy Kammer, who was assisting at the scene, that I thought there may be alcohol involved. Deputy Kammer went to the hospital to investigate, while I stayed on the scene. SEE SUPPLEMENTAL. Deputy Kammer obtained a searched [sic] warrant from Magistrate Balian to have blood drawn from Derek. Derek's license was confiscated and he was issued a paper license.

A warrant packet, for Operating While Intoxicated causing serious accident, will be submitted pending result of blood draw.

(*Id.* at 7, Thomas 10/21/07 Report.)

Sergeant Stoner reports that he spoke with Plaintiff at Pontiac Osteopathic Hospital

after the accident:

Both subjects were transported to POH. Upon arrival I received information from Dr. Blaker that the female passenger of the vehicle was in critical condition. The driver later ID as Derek Andrews was in fare [sic] condition. I talked to Andrews who said that he and his girlfriend were at a friend's house. They both had been drinking and he also had smoked some Marijuana prior to driving. While they were W/B on Avon Road W/O Livernois they began to argue. Andrews said his girlfriend went to hit him and he lost control of the vehicle. Andrews said he climbed out of the vehicle. The next thing was a deputy asking him what happened. I asked Andrews if he would consent to a Blood test. Andrews said "yes," "I messed up just take me to jail". Deputy Kammer later arrived with the Blood Test and obtained the sample.

(*Id.* at 8, Sgt. Stoner 10/21/07 Report (emphasis added).)

Deputy Kammer was also at the accident site, assisted Deputy Thomas, and reported

that:

Once [Rochester Hills Fire Department] had transported both the driver and passenger to POH Medical, Deputy Thomas advised me that he had smelled intoxicants on the driver's (Derek Andrews) breath. Deputy Thomas requested that I go to POH and investigate while he stayed on scene at the accident.

4

Upon arrival at POH, <u>I went into the Emergency Room and spoke with Derek Andrews.</u>  Derek stated that he was driving his girlfriend (Marissa [sic] Mazur) home from a party at approx. 04:20 hrs this morning.  <u>Derek stated that they were arguing and he drove off of the roadway onto the south shoulder</u>.  Derek stated that he remembered loosing [sic] control of the vehicle, but not much after that.  I asked Derek if he had been drinking alcohol at the party prior to the accident and he replied that he had.  Derek stated that he had consumed approx. 6 beers between 02:00 hrs and 03:30 hrs.  I then asked him if he [sic] done any drugs while at the party and he replied that he had smoked some marijuana.  I asked him how much he had smoked and he replied that he had done two "bong hits" between the hours of 01:00 hrs and 02:00 hrs.

After speaking with Derek I contacted Magistrate Balian from the 52-3 District Court.  I advised her of the above information and requested she authorize a search warrant for a blood draw.  The completed search warrant was then sworn to and faxed to Magistrate Balian.  Magistrate Balian signed the search warrant and faxed it back to me at POH.

With the completed search warrant in hand, I contacted Dr. Chris Steinacker for the blood draw.  Dr. Steinacker then filled the two blood vials with Derek Andrews' blood and handed it to me.  I then placed the vials into the MSP blood kit and sealed the box.

With the completed blood draw kit I left POH and returned to the Rochester Hills Sub Station where the blood kit was mailed to MSP for testing.

(*Id*. at 9, Kammer 10/21/07 Report (emphasis added).)

Deputy Richert's report details the other officer's activities and includes Plaintiff's statements (1) to Deputy Thomas that he was the driver and that he had been drinking, and (2) to Sgt. Stoner and to Deputy Kammer at the hospital that he was operating the vehicle that crashed and that he was drinking.  (*Id*. at 10, Richert 10/21/07 Report.)  In his affidavit, Deputy Richert avers that, by the time he arrived on the accident scene, Plaintiff and his passenger had already been removed to the hospital.  (Richert 4/16/09 Aff. ¶ 4.)  He further avers that he later went to the hospital and, while there, spoke with Plaintiff's parents and Merissa Mazur's mother, but did not speak with either Plaintiff or Merissa Mazur or have any contact with Plaintiff at the hospital on the date of the accident.  (*Id*. at

5

¶¶ 5-9.)  Plaintiff's affidavit contradicts this.  He avers that, while he was in the hospital on October 21, 2007, Deputy Richert came into him hospital room, "threw a cupped handful of water in [his] face was [he] was resting, strapped to a backboard," "attempted to question [him] about the accident," and that "[w]ithin 24 hours of the accident, [he] told Officer Richert that there was a struggle in the vehicle immediately prior to the accident."  (D. Andrews 5/14/09 Aff. ¶¶ 2-5.)  Plaintiff's parents, Mark and Suki Andrews, also aver in their affidavits that they "arrived at the hospital within hours of the accident," "nearly collided with Officer Richert as [they] were entering Derek's room – Officer Richert was leaving [their] son's room at the same time [they] were entering it," and about 30 or 40 minutes later, Officer Richert told them that Derek "had told him that there was a struggle in the car before the accident."  (M. Andrews 5/14/09 Aff. at ¶¶ 2-4; S. Andrews 5/14/09 Aff. at ¶¶ 2-4.)

On October 27, 2007, Deputy Thomas provided an additional report:

> I conducted a follow up at Pontiac Osteopathic Hospital to check on the injuries Merissa Mazur sustained during the crash that occurred on October 21, 2007. I spoke with Doctor Samuels who is the attending Physician in the intensive care unit at the hospital.  She stated that Merissa initially sustained brain bleeding that required surgery with evacuation of the blood and removal of a portion of her skull to prevent the brain from swelling.
>
> Doctor Samuels further stated that Merissa has been in the intensive care unit since the initial surgery and is currently on a mechanical ventilator.  She also has pneumonia and high fevers.

(*Id.* at 13, Thomas 10/27/07 Supplemental Report.)

On November 9, 2007, Captain Quaine of the Rochester Hills Fire Department provided the following witness statement:

> On Sunday 10-21-07 @ 0424 hrs, I was dispatched to a vehicle accident on W. Avon W/O Livernois.  Upon arrival [sic] found 2 [patient] lying on ground next to the curb, 1 female [patient] that was unresponsive, and 1 male [patient] lying next to her.  He stated numerous times, "I'm drunk.  I need to go to jail."  "I didn't

6

mean to hurt her, take me to jail." He stated he was driving, and walked out of the car. See medical run sheet for further information.

(Defs.' Ex. 2 at 19, Qauine 11/9/07 Witness Statement.)

On November 19, 2007, Deputy Rickert reported the following "Crash Findings."

Derek Taylor Andrews was operating a 1999 Ford Explorer eastbound on West Avon Road. He was accompanied by Merissa Leigh Mazur, seated in the front passenger seat. Andrews had admittedly consumed alcohol prior to driving. He lost control of his vehicle, rolling over, causing serious head trauma to Miss Mazur.

Blood drawn pursuant to a search warrant indicated his blood alcohol level was .08% approximately two hours after the crash.

(*Id.* at 16, Richert 11/19/07 Report.)

On November 20, 2007, Deputy Richert reported that the Oakland County Prosecutors Office "reviewed the complaint," and issued an arrest warrant for "OWI Causing Serious Injury" on November 21, 2007. (Defs.' Ex. 2 at 26.)

On November 21, 2007, Plaintiff was arraigned and a $5,000 personal bond was issued. (*Id.*)

On July 29, 2008, Deputy Thomas supplemented the accident report to clarify that Plaintiff told him at the accident scene that while in the car, before the accident, he and his female passenger began to argue and "at some point Marissa [sic] grabbed the steering, Derek then lost control and the vehicle ran off the road and rolled over." (Defs.' Ex. 1, Thomas 7/29/08 Supplemental Report (emphasis added).)

On September 11, 2008, Plaintiff pleaded guilty to operating a vehicle while impaired, a reduced charge from the original charge of operating while intoxicated causing injury. He was sentenced to two years' probation, fines, and various other requirements.

7

On February 1, 2009, Plaintiff filed his § 1983 action in this Court.  The matter is now before the Court on Defendants' motion for summary judgment.

## II.    Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party.  *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.   Analysis

**A.  Defendants' *Heck v. Humphrey* Argument**

Defendants first argue that Plaintiff's § 1983 complaint must be dismissed because, as mandated by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), damages for harms allegedly "caused by actions whose unlawfulness would render a conviction or sentence invalid" are unavailable unless the plaintiff proves that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."  Because Plaintiff has not shown that his conviction or sentence for Operating While Impaired fits these requirements, Defendants contend that his § 1983 action must be dismissed.

Defendants' argument misses the point of Plaintiff's § 1983 suit.  He does not challenge the charge to which he pleaded guilty.  Rather, Plaintiff raises a Fourteenth Amendment due process challenge to the original charge of operating while intoxicated causing serious injury, Mich. Comp. Laws § 257.625(5).  Plaintiff alleges that Defendant Deputies deliberately omitted his statements to them that he and his female passenger were arguing and struggling in the car and that she grabbed the steering wheel immediately before the accident causing him to lose control.  He further argues that those omissions led to the issuance of an arrest warrant and the prosecution of charges against him for operating while intoxicated causing serious injury in violation of Michigan Compiled Law § 257.625(5). In essence, Plaintiff is arguing that Defendant Deputies violated his Fourteenth Amendment due process rights by their deliberate omissions because, when those omitted facts are considered, probable cause for the original charge is lacking.  Because Plaintiff

9

was never brought to trial on the original charge of operating while intoxicated causing serious injury, there is no *Heck v. Humphrey* issue here.

### B. Plaintiff's Due Process Arguments

Defendants argue in their motions that they are entitled to qualified immunity. In a very recent decision, the Sixth Circuit addressed a similar argument in the context of a § 1983 excessive force case. *See Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009). It began, as this Court does, with a discussion of the doctrine of qualified immunity and how the Court determines whether a defendant is entitled to the protection afforded by that doctrine.

The doctrine of qualified immunity shields "'government officials performing discretionary functions'" from "'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 309 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). On summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party; Plaintiff in this case. Viewing the facts in that light, the Court must then determine "whether: 1) the violation of a constitutional right has occurred; and 2) the constitutional right at issue 'was clearly established at the time of defendant's alleged misconduct.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and citing *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004)). Although the Supreme Court, in *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 818 (2009), recently held that the courts now have discretion to address the second step first when appropriate, this Court, similar to the Sixth Circuit in *Grawey v. Drury*, will first examine whether Plaintiff has presented evidence of a constitutional violation. *Grawey*, 567 F.3d at 309.

10

As stated above, Plaintiff argues that Defendant Deputies violated his Fourteenth Amendment due process rights and caused him to incur the expense and humiliation of defending against an unsubstantiated and inappropriate felony charge for operating while intoxicated causing serious injury, Mich. Comp. Laws § 257.625(5), as opposed to the lesser expense and humiliation of defending against the lesser charge of operating a vehicle while impaired in violation of Mich. Comp. Laws § 257.625(1)(a).  Specifically, Plaintiff argues that "[b]ut for Defendants' willful and deliberate omissions and false statements," Plaintiff would never have been arrested and initially prosecuted under the original charge of operating while intoxicated causing serious injury.  This is in essence a Fourth Amendment argument asserting  that, but-for the deliberate omission of the female passenger's culpable conduct in connection with the accident, there was no probable cause to arrest Plaintiff on the original charge.  Plaintiff is mistaken.

As the Sixth Circuit recently observed in a similar case, "probable cause to justify an arrest means facts and circumstances . . . that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Garner v. Grant*, No. 08-1418, 2009 WL 1391521, *2 (6th Cir. May 15, 2009) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).  Construing the evidence in the light most favorable to Plaintiff and including the omitted information that Plaintiff told Defendants that Merissa Mazur grabbed the steering wheel of Plaintiff's vehicle while they were arguing and caused him to lose control, run off the road, and roll the vehicle, probable cause existed for Plaintiff's arrest under the original charge of operating while intoxicated causing serious bodily injury in violation of Michigan Compiled Laws § 257.625(5).

11

The Michigan statute for the original charge provides that:

A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1), (3), or (8) and by the operation of that motor vehicle causes a serious impairment of a body function of another person is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not less than $1,000.00 or more than $5,000.00, or both.

Mich. Comp. Laws § 257.625(5).  To convict, "[t]he prosecution 'must establish beyond a reasonable doubt that 1) the defendant was operating his or her vehicle in violation of MCL 257.625(1), (3), or (8); 2) the defendant voluntarily decided to drive, knowing that he had consumed an intoxicating agent and might be intoxicated; and 3) the defendant's operation of the motor vehicle caused the victim's [serious impairment of a body function].'" *People v. Wardwell*, No. 280298, 2009 WL 186233, *3 (Mich. Ct. App. Jan. 27, 2009) (quoting *People v. Schaefer*, 703 N.W.2d 774, 784 (Mich. 2005)).  As to the third element, the Michigan Supreme Court held in *Schaefer* that "it is the defendant's *operation* of the motor vehicle that must cause the victim's [injury], not the defendant's 'intoxication.'" *Schaefer*, 703 N.W.2d at 782.  It then clarified that this causation element has "two components: factual cause and proximate cause." *Id.* at 785.  To establish factual cause, the prosecutor must show that "'but for' the defendant's conduct," the result would not have occurred.  *Id.* To establish proximate cause, the prosecutor must show that "the victim's injury [is] a 'direct and natural' result of the defendant's actions." *Id.*  The *Schaefer* Court explained:

If factual causation is established, it must then be determined whether the defendant's operation of the vehicle was a proximate cause.  In doing so, one must inquire whether the victim's [injury] was a direct and natural result of the defendant's operation of the vehicle and whether an intervening cause may have superseded and thus severed the causal link.  While an act of God or the *gross* negligence or intentional misconduct by the victim or a third party will generally be considered a superseding cause, *ordinary* negligence by the victim or a third party will not be regarded as a superseding cause because ordinary negligence is reasonably foreseeable.

12

*Id.* at 786 (internal footnote omitted and emphasis in original).  Michigan courts have upheld the finding of proximate cause in a prosecution for operating while intoxicated causing serious injury despite the victim's negligent act of suddenly walking onto the road in front of the defendant's car.  *See, e.g., People v. Wardwell*, No. 280298, 2009 WL 186233 (Mich. Ct. App. Jan. 27, 2009); *People v. Erskine*, No. 258572, 2006 WL 515445 (Mich. Ct. App. Mar. 2, 2006).  As defined by the Michigan Supreme Court in *Schaefer*, the "gross negligence" that may be regarded as a superseding cause under the statute "is not merely an elevated form of ordinary negligence."  *Schaefer*, 703 N.W.2d at 786.  Rather, "in criminal jurisprudence, gross negligence means wantonness and disregard of the consequences which may ensue, and indifference to the rights of others that is equivalent to a criminal intent."  *Id.* (internal quotation marks and citation omitted.)

Viewing the evidence presented here in the light most favorable to Plaintiff, probable cause existed on the original charge.  The facts and circumstances of the accident, including Plaintiff's statements (1) to the Sergeant Stoner that he and his girlfriend were arguing, that she went to hit him and he lost control of the vehicle; (2) to Deputy Thomas that Plaintiff and his female passenger "began to argue and at some point Marissa [sic] grabbed the steering, Derek then lost control and the vehicle ran off the road and rolled over;" and (3) to Deputy Richert that "there was a struggle in the vehicle immediately prior to the accident," are sufficient to warrant a prudent person to believe that Plaintiff had committed the offense of operating a vehicle while intoxicated causing serious injury. (Defs.' Ex. 2 at 8, Sgt. Stoner 10/21/07 Report; Defs.' 1, Deputy Thomas 7/29/08 Suppl. Report; D. Andrews Aff. at ¶ 5.)   Because Plaintiff cannot show that probable cause to arrest and prosecute on the original charge is lacking when the omitted information is

considered, there can be no Fourth Amendment violation. This leaves Plaintiff's Fourteenth Amendment due process claim.

Plaintiff alleges that Defendant Deputies deprived him of his due process rights by failing to provide his statements about his passenger's culpable conduct to the prosecutor sooner. Plaintiff concedes that he was never tried on the original charges. Thus, there can be no claim that Defendants' omissions impacted the fundamental fairness of a trial that never occurred. That Plaintiff pled guilty to the lesser charge of operating while impaired does nothing to advance his due process claim when, as discussed above, Plaintiff cannot show that probable cause was lacking on the original charge. Furthermore, careful review of the materials presented to the prosecutor before a decision was made to issue an arrest warrant on the original charge reveals that they contained information substantially similar to that Plaintiff claims was deliberately omitted; i.e., – that Andrews told Sgt. Stoner that he and his girlfriend were arguing, that she went to hit him and he lost control of the vehicle. (Defs.'s Ex. 2 at 8, Sgt. Stoner 10/21/07 Report.) The affidavits Plaintiff presents here in opposition to Defendants' motion for summary judgment similarly state that Plaintiff told Deputy Richert within 24 hours of the accident "that there was a struggle in the vehicle immediately prior to the accident." (D. Andrews Aff. at ¶ 5; M. Andrews Aff. at ¶ 4; S. Andrews Aff. at ¶ 4.) Viewing the evidence in the light most favorable to Plaintiff, there is no Fourteenth Amendment due process violation.

The Court now addresses Plaintiff's Eighth Amendment claim alleging that Defendant Richert's treatment of him in the hospital constituted cruel and unusual punishment.

## C. Plaintiff's Excessive Force Argument

Plaintiff asserts that when Defendant Richert threw a cupped handful of water in his face and attempted to question him while he was "strapped to a backboard" and resting in the hospital emergency room, Richert violated his Eighth Amendment right to be protected from cruel and unusual punishment. Plaintiff is relying on the wrong Constitutional Amendment. The Sixth Circuit has held that "[w]hich amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). Convicted prisoners are afforded protection under the Eighth Amendment and the "deliberate indifference standard sets the standard for an excessive force claim." *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008). Pretrial detainees are afforded protection under the Fourteenth Amendment's Due Process Clause "against physical abuse by officials." *Id.* at 681. "But if the plaintiff was a free person, and the use of force occurred in the course of an arrest or other seizure, then the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard." *Id.* at 680. At the time of the incident complained of here, Plaintiff was a free person and thus his excessive force claim is governed by the Fourth Amendment's reasonableness standard. *See id.*

Defendants argue that they are entitled to qualified immunity on Plaintiff's excessive force claim. "In step one of the qualified immunity analysis, the court determines whether this evidence, produced by plaintiff, taken in the light most favorable to plaintiff but viewed from the perspective of a reasonable officer on the scene, establishes a claim of excessive force in violation of the Constitution." *Grawley*, 567 F.3d at 309. If an excessive force claim is established, the Court proceeds to the second step. At this step, the Court must

15

determine whether the violated constitutional right was clearly established at the time of the alleged misconduct.  *Id.*

Viewing the evidence in the light most favorable to Plaintiff, this Court concludes that he has not established a claim of excessive force in violation of the Constitution.  As the Sixth Circuit recently observed "an excessive-force claimant must show something more than *de minimis* force."  *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008).  In *Leary*, the Sixth Circuit rejected an excessive force claim as *de minimis* where the defendant officer hit the plaintiff on the back of his neck with a karate-type chop.  The same analysis and result apply here.  Plaintiff's single allegation of force in this lawsuit is that Defendant Richert threw a cupped handful of water into his face.  Plaintiff has not presented evidence that he suffered "any objectively verifiable injury" from that action.  *Id.* "Nothing in short to indicate that the encounter rose above a 'negligible [use of] force' or caused anything more than a 'trifling injury.'"  *Id.* (quoting *Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir. 1997) (en banc)).   Plaintiff may have a state-law tort claim for assault and battery, but he has not established a claim for excessive force in violation of the Constitution.  "The point of the *de minimis* rule is to make it clear that the Constitution does not become a 'font of tort law' that the federal courts 'superimpose[] upon whatever systems' the States already have."  *Leary*, 528 F.3d at 445 (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)).

### D. Municipal Liability

Plaintiff also seeks to hold Oakland County liable for his alleged constitutional injuries.  Although "a municipality cannot be held liable under § 1983 on a respondeat superior theory," it may be sued directly under § 1983 if "the action that is alleged to be

16

unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officer" or if "constitutional deprivations [were] visited pursuant to governmental 'custom.'"  *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Before a municipality may be held liable under § 1983, a constitutional violation must have occurred.  *See* 42 U.S.C. § 1983.  As discussed above, Plaintiff has failed to establish that any of his constitutional rights were violated.  Thus, Defendant Oakland cannot be held liable, and Defendants' motion for summary judgment is granted in its entirety.

**IV.   Conclusion**

For the above-stated reasons, Defendants' motion for summary judgment is GRANTED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  July 27, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 27, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager